# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| JACK COOPER VENTURES, INC., *et al.*[1] | ) Case No. 19-62393 (PWB) |
| | ) |
| Debtors. | ) (Jointly Administered ) |

# STATEMENT OF FINANCIAL AFFAIRS FOR
## JACK COOPER INVESTMENTS, INC. (CASE NO. 19-62411)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Jack Cooper Ventures, Inc. (0805); Jack Cooper Diversified, LLC (9414); Jack Cooper Enterprises, Inc. (3001); Jack Cooper Holdings Corp. (2446); Jack Cooper Transport Company, Inc. (3030); Auto Handling Corporation (4011); CTEMS, LLC (7725); Jack Cooper Logistics, LLC (3433); Auto & Boat Relocation Services, LLC (9095); Axis Logistic Services, Inc. (2904); Jack Cooper CT Services, Inc. (3523); Jack Cooper Rail and Shuttle, Inc. (7801); Jack Cooper Investments, Inc. (6894); North American Auto Transportation Corp. (8293); Jack Cooper Transport Canada, Inc. (8666); Jack Cooper Canada GP 1 Inc. (7030); Jack Cooper Canada GP 2 Inc. (2373); Jack Cooper Canada 1 Limited Partnership (3439); and Jack Cooper Canada 2 Limited Partnership (7839). The location of the Debtors' corporate headquarters and service address is: 630 Kennesaw Due West Road NW, Kennesaw, Georgia 30152.

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JACK COOPER VENTURES, INC., *et al.*[1] | ) | Case No. 19-62393 (PWB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### Introduction

The Schedules of Assets and Liabilities (collectively, the "Schedules") and Statements of Financial Affairs (collectively, the "Statements," and, together with the Schedules, the "Schedules and Statements") filed by Jack Cooper Ventures, Inc. and its affiliates as debtors and debtors in possession (collectively, the "Debtors") in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") were prepared in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure by management of the Debtors, with the assistance of the Debtors' professional advisors, and are unaudited.

The Schedules and Statements have been signed by Greg May, Chief Financial Officer of the Debtors. Mr. May has not (nor could have) personally verified the accuracy of each such statement and representation, including, for example, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses. In addition, Mr. May has not (nor could have) personally verified the completeness of the Schedules and Statements, nor the accuracy of any information contained therein. In reviewing and signing the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Jack Cooper Ventures, Inc. (0805); Jack Cooper Diversified, LLC (9414); Jack Cooper Enterprises, Inc. (3001); Jack Cooper Holdings Corp. (2446); Jack Cooper Transport Company, Inc. (3030); Auto Handling Corporation (4011); CTEMS, LLC (7725); Jack Cooper Logistics, LLC (3433); Auto & Boat Relocation Services, LLC (9095); Axis Logistic Services, Inc. (2904); Jack Cooper CT Services, Inc. (3523); Jack Cooper Rail and Shuttle, Inc. (7801); Jack Cooper Investments, Inc. (6894); North American Auto Transportation Corp. (8293); Jack Cooper Transport Canada, Inc. (8666); Jack Cooper Canada GP 1 Inc. (7030); Jack Cooper Canada GP 2 Inc. (2373); Jack Cooper Canada 1 Limited Partnership (3439); and Jack Cooper Canada 2 Limited Partnership (7839). The location of the Debtors' corporate headquarters and service address is: 630 Kennesaw Due West Road NW, Kennesaw, Georgia 30152.

Schedules and Statements, Mr. May necessarily relied upon various personnel of the Debtors and the Debtors' professional advisors and their efforts, statements, and representations in connection therewith. Although management has made reasonable efforts to ensure that the Schedules and Statements are accurate and complete based upon information that was available to them at the time of preparation, subsequent information or discovery thereof may result in material changes to the Schedules and Statements, and inadvertent errors, inaccuracies or omissions may exist.

These Global Notes and Statement of Limitations, Methods, and Disclaimer Regarding the Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes should be referred to and reviewed in connection with any review of the Schedules and Statements. The Global Notes are in addition to any specific notes contained in any Debtor's Schedules or Statements. Disclosure of information in one Schedule, Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or continuation sheet.

**The Schedules, Statements, and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

## Global Notes and Overview of Methodology

1.  **General Reservation of Rights**. Although the Debtors' management has made every reasonable effort to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances based on information that was available to it at the time of preparation, subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors or omissions may have occurred, some of which may be material. Because the Schedules and Statements contain unaudited information, which remains subject to further review, verification, and potential adjustment, there can be no assurance that the Schedules and Statements are complete. The Debtors reserve all rights to amend the Schedules and Statements from time to time, in any and all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim ("Claim") as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules and Statements shall constitute an admission of any claims or a waiver of any of the Debtors' rights with respect to these chapter 11 cases, including issues involving substantive consolidation, recharacterization, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

2.  **Description of Cases and "As Of" Information Date**. On August 6, 2019 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtors' chapter 11 cases are jointly administered for procedural purposes only pursuant to an order entered by the Bankruptcy

1

Court on August 8, 2019 [Docket No. 57]. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. Unless otherwise stated herein, the assets and liabilities are reported as of July 31, 2019.

3. **Basis of Presentation**. The Schedules and Statements purport to reflect the assets and liabilities of separate Debtors. The Debtors, however, along with their wholly-owned non-Debtor subsidiaries, prepare financial statements for financial reporting purposes, which are audited annually, on a consolidated basis. Moreover, the Debtors generally operate and account for transactions, including many ordinary course daily transactions, through one of their four main operating subsidiaries: Jack Cooper Transport Company, Inc., Jack Cooper Logistics, LLC, Auto & Boat Relocation Services, LLC and CTEMS, LLC (the "Primary Operating Debtors"). For these reasons, the Debtors have largely attributed their assets and liabilities for purposes of completing the Schedules and Statements to one or more of the Primary Operating Debtors and as a result, unless indicated otherwise, the assets and liabilities are not presented at the individual Debtor level. There are instances, however, when another Debtor engages in a specific transaction or series of transactions which might generate assets, liabilities or other entries reported in the Schedules and Statements. When practicable, the Schedules and Statements reflect the assets and liabilities of each separate Debtor. But certain assets and liabilities reported in the Schedules of one or more of the Primary Operating Debtors may, in fact, be owned by one of the other Debtors. However, it would be unduly burdensome and an inefficient use of estate assets for the Debtors to allocate all of their assets and liabilities other than as described above. The Debtors reserve all rights relating to the legal ownership of assets and liabilities among the Debtors and nothing in the Schedules or Statements shall constitute a waiver or relinquishment of such rights. Information contained in the Schedules and Statements has been derived from the Debtors' books and records. The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles nor are they intended to be fully reconcilable to audited financial statements.

4. **Totals**. All totals that are included in the Schedules and Statements represent totals of all known amounts included in the Debtors' books and records. To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed total, and the difference may be material. In addition, the amounts shown for total liabilities exclude items identified as "unknown," "disputed," "contingent," "unliquidated," or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in the Schedules are inclusive of each Debtor's guarantor obligations.

5. **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including goodwill, intangibles, and certain accrued liabilities including, but not limited to, accrued employee compensation and benefits, certain customer accruals, tax accruals, accrued accounts payable, accrued contract termination damages, deferred income accruals, litigation accruals, and certain deposits. The Debtors have also excluded potential Claims arising on account of the potential rejection of executory contracts and unexpired leases, to the extent such Claims

2

exist.  Certain immaterial assets and liabilities that are not reported or tracked centrally may have been excluded.

6.  **Amendments and Supplements; All Rights Reserved**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; inadvertent errors or omissions, however, may exist.  The Debtors reserve all rights, but are not required, to amend and/or supplement the Schedules and Statements from time to time as is necessary and appropriate.

7.  **References**.  Reference to applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of liens and/or claims.  Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

8.  **Currency**.  All amounts are reflected in U.S. dollars.

9.  **Book Value**.  Unless otherwise indicated, the Debtors' assets are shown on the basis of their net book values as of July 31, 2019, and the Debtors' liabilities are shown on the basis of their net book values as of July 31, 2019.  Thus, unless otherwise noted, the Schedules and Statements reflect the carrying value of the assets and liabilities as recorded on the Debtors' books.  Net book values may vary, sometimes materially, from market values.  The Debtors do not intend to amend these Schedules and Statements to reflect market values.

10.  **Paid Claims**.  The Bankruptcy Court authorized the Debtors to pay certain outstanding prepetition Claims—including, but not limited to, payments to employees, customers, and certain vendors—pursuant to various "first day" orders entered by the Bankruptcy Court.  Accordingly, certain outstanding liabilities may have been reduced by post-petition payments made on account of prepetition liabilities.  Where the Schedules list creditors and set forth the Debtors' scheduled amount of such Claims, such scheduled amounts reflect amounts owed as of August 5, 2019.  In addition, to the extent the Debtors later pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.

11.  **Recharacterization**.  Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items.  The Debtors reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as they determine to be necessary and appropriate.

12.  **Claims of Third-Party Entities**.  Although the Debtors have made reasonable efforts to classify properly each Claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and/or contingent or non-contingent, the Debtors have not been able to fully reconcile all payments made to certain third-party entities on account of the

Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of Claims of a creditor as disputed, for example, all Claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are individually designated as such.

13. **Liabilities**. The Debtors allocated liabilities between the prepetition and post-petition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available, and further research is conducted, particularly with respect to the Debtors' payable accounts, the allocation of liabilities between the prepetition and post-petition periods may change. The Debtors reserve the right to, but are not required to, amend the Schedules and Statements as they deem appropriate to reflect this.

The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

14. **Guarantees and Other Secondary Liability Claims**. Where guarantees have been identified, they have been included in the relevant liability Schedule for the Debtor or Debtors affected by such guarantee. The Debtors have also listed such guarantees on the applicable Schedule H. It is possible that certain guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

15. **Intercompany Claims**. The Debtors and/or the Debtors and non-debtor subsidiaries maintain business relationships among each other in the ordinary course of business, resulting in intercompany receivables, payables, intercompany notes receivable and notes payable, and investment in subsidiary balances (the "Intercompany Claims"). Such Intercompany Claims arise (a) by and among the Debtors, and (b) by and among the Debtors and non-Debtor subsidiaries pursuant to intercompany arrangements. The respective intercompany accounts for each Debtor as of July 31, 2019 include intercompany accounts payable and accounts receivable and are listed at the net amount due to/due from the Debtors on Schedule A/B, P11, Question 77, intercompany notes payable are listed on Schedule A/B, Part 11, Question 71, intercompany notes receivable are listed on Schedule E/F, Part 2, and investment in subsidiary balances are listed on Schedule A/B, P11, Question 77.

16. **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition,

or other transaction.  The Debtors have made significant efforts to attribute intellectual property to the rightful Debtor owner, however, in some instances intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all such intellectual property rights.

17.  **Executory Contracts and Unexpired Leases**.  The Debtors have not set forth executory contracts or unexpired leases as assets in the Schedules and Statements.  The Debtors' executory contracts and unexpired leases have been set forth in Schedule G.  In addition, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over inclusion may have occurred.

18.  **Claims Description**.  Schedules D, E, and F permit each of the Debtors to designate a Claim as "disputed," "contingent," and/or "unliquidated."  Any failure to designate a Claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated" or that such Claim is not subject to objection.  The Debtors reserve all rights to dispute any Claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such Claims as "disputed," "contingent," or "unliquidated."  In addition, the Debtors reserve their rights to object to any listed Claim on the grounds that, among other things, the Claim has already been satisfied.

19.  **Causes of Action**.  Despite their reasonable efforts, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.  The Debtors reserve all of their rights for any claims, causes of action, or avoidance actions they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such claims.

20.  **Undetermined Amounts**.  Claim amounts that could not readily be quantified by the Debtors are scheduled as "unknown," "TBD," or "undetermined".  The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

21.  **Unliquidated Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated".

22.  **Liens**.  Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property or equipment.

23.  **Employee Addresses**.  Current employee, former employee, and director addresses have been removed from entries listed throughout the Schedules and Statements, where applicable.

24. **Global Notes Control**.  In the event that the Schedules and Statements differ from these Global Notes, the Global Notes shall control.

25. **Confidentiality**:  There may be instances in the Schedules and Statements where the Debtors have deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts.  Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of, or otherwise preserving the confidentiality of, personally identifiable information.

26. **Estimates**.  To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

27. **Fiscal Year**.  Each Debtors' fiscal year ends on December 31.

28. **Interests in Subsidiaries and Affiliates**.  Debtor Jack Cooper Investments, Inc. is the 100% equity holder of Debtor Jack Cooper Ventures, Inc., which in turn is a holding company with each of the other Debtors being wholly-owned directly or indirectly subsidiaries of Jack Cooper Ventures, Inc.  Each Debtor's Schedule A/B15 or Statement 25 contains a listing of the current capital structure of the Debtors and includes ownership interests.

29. **Umbrella or Master Agreements**.  Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreement have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.

30. **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

31. **Setoffs**. The Debtors incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

32. **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders" the Debtors have included information with respect to the individuals and entities that the Debtors believe are included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals

may no longer serve in such capacities. In the interest of additional disclosure, the Debtors have also included certain individuals who may have officer titles in their responses to Statements, Part 13, Question 28.

Persons listed as "insiders" have been included for informational purposes only. The Debtors do not take any position with respect to: (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

33. **Payments**. The financial affairs and business of the Debtors are complex. Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management Systems") (as described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using the Cash Management System and (B) Maintaining Existing Bank Accounts and Business Forms, (II) Authorizing Continued Intercompany Transactions, (III) Granting Administrative Expense Status to Intercompany Claims, and (IV) Granting Related Relief* [Docket No. 9]). Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

34. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

35. **Gross Revenue**. Amounts listed for gross revenue in Part 1 of the Statements from the beginning of fiscal year to filing date reflects gross revenue from such Debtor's business for the period of January 1, 2019 through and including August 5, 2019.

## General Disclosures Applicable to Schedules

1. **Classifications**. Listing a Claim (a) on Schedule D as "secured," (b) on Schedule E as "priority," or (c) on Schedule F as "unsecured," or a contract on Schedule G as "executory" or "unexpired," does not in each case constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' right to recharacterize or reclassify such Claim or contract.

2. **Schedule A/B - Real and Personal Property**. The Debtors have only included open accounts payable that the Debtors have received as of August 5, 2019.

   a) **Schedule A/B.3.** Bank account balances are as of the end of business on August 5, 2019.

b) **Schedule A/B.11.** Lists accounts receivable as of July 31, 2019. Additionally, it would be unduly burdensome and impractical to list accounts receivable itemized on a payee by payee basis. As such, the accounts receivable are presented in the aggregate on a Debtor by Debtor basis and identified as accounts receivable that are aged 90 days or less, and accounts receivable aged greater than 90 days.

c) **Schedule A/B.15**. Equity interests in subsidiaries and affiliates arise from common stock ownership. For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests. The book values of certain assets may materially differ from their fair market values and/or the liquidation of the assets prepared in connection with the Disclosure Statement.

d) **Schedule A/B; Part 7:** Office furniture, fixtures, equipment, and collectibles are recorded at cost and depreciated on a straight-line basis over the estimated useful lives of the assets. When office furniture or computer equipment is sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved, and any resulting gain or loss is reflected in earnings.

e) **Schedules A/B.39-41:** It would be time consuming and an inefficient use of the Debtors' estates' assets, or impracticable, to review and assign each interest in office furniture, fixtures, equipment, and collectibles to a specific Debtor. Consequently, Schedules A/B.39-41 may list interests in office furniture, fixtures, equipment, and collectibles of other Debtors.

f) **Schedule A/B; Part 8:** Machinery, equipment and vehicles are recorded at cost and depreciated on a straight-line basis over the estimated useful lives of the assets. When machinery, equipment, and vehicles are sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved and any resulting gain or loss is reflected in earnings.

g) **Schedule A/B.47:** It would be time consuming and an inefficient use of the Debtors' estates' assets, or impracticable, to review and assign each interest in a vehicle or other piece of machinery to a specific Debtor. Consequently, Schedule A/B.47 may list interests in machinery of other Debtors.

h) **Schedule A/B; Part 9:** Real Property is recorded at cost and depreciated (as appropriate) on a straight-line basis over the estimated useful lives of the assets. Leasehold improvements are depreciated over the shorter of the remaining expected lease term or the estimated useful lives of the assets. Costs of improvements and renewals are capitalized, while costs of normal maintenance and repairs are charged to expense as incurred. When property is sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved and any resulting gain or loss is reflected in earnings.

i) **Schedule A/B.50**: It would be time consuming and an inefficient use of the Debtors' estates' assets, or impracticable, to review and assign each interest in machinery, fixtures, and equipment to a specific Debtor. Consequently, Schedule

8

A/B.50 may list interests in machinery, fixtures, and equipment relating to other Debtors. If any such machinery, fixtures, and equipment are leased, the applicable leases will appear on the relevant Debtor's Schedule G of executory contracts and unexpired leases; however, the corresponding value of the leasehold interest will be reflected in Schedule A/B.50 as "undetermined" and included in the aggregate amount reported by the corresponding Primary Operating Debtor.

j)  **Schedule A/B.55:**  It would be time consuming and an inefficient use of the Debtors' estates' assets, or impracticable, to review and assign each interest in real property relating to office and plant locations to a specific Debtor. Consequently, Schedule A/B.55 may list interests in real property relating to offices of other Debtors. If any such real property is leased, the applicable leases will appear on the relevant Debtor's Schedule G of executory contracts and unexpired leases; however, the corresponding value of the leasehold interest will be reflected in Schedule A/B.50 as "undetermined" and included in the aggregate amount reported by the corresponding Primary Operating Debtor.

k)  **Schedule A/B.60:**  It would be time consuming and an inefficient use of the Debtors' estates' assets, or impracticable, to review and assign each interest in patents, copyrights, trademarks, and trade secrets to a specific Debtor. Consequently, Schedule A/B.55 may list interests in patents, copyrights, trademarks, and trade secrets relating to offices of other Debtors. If any such patents, copyrights, trademarks, and trade secrets are leased, the applicable leases will appear on the relevant Debtor's Schedule G of executory contracts and unexpired leases; however, the corresponding value of the leasehold interest will be reflected in Schedule A/B.50 as "undetermined" and included in the aggregate amount reported by the corresponding Primary Operating Debtor.

l)  **Schedule A/B.74:**  Despite exercising their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. Unless otherwise noted on specific responses, items reported on Schedule A/B are reported from the Debtors' book and records as of July 31, 2019. The Debtors reserve all of their rights with respect to any claims and causes of action they may have. Neither these Global Notes nor the Schedules shall be deemed a waiver of any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

m)  **Schedule A/B.75:**  In the ordinary course of business, the Debtors may have accrued, or may in the future accrue, certain rights to counter-claims, cross-claims, setoffs, and/or refunds with Debtors' customers and suppliers, or potential warranty claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant. Because such claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed on Schedule A/B.75.

n) **Schedule A/B.77.**  The Debtors maintain certain accounts receivable accounts, excluding vendor trade receivables, which are not aged.  Such accounts are listed in Schedule A/B. 77.

3. **Schedule D - Creditors Holding Secured Claims**.  The Claims listed on Schedule D arose or were incurred on various dates; a determination of the date upon which each Claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each Claim.  All Claims listed on Schedule D, however, appear to have arisen or have been incurred before the Petition Date.

Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset of a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors have scheduled Claims of various creditors as secured Claims, the Debtors reserve all of their rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.  Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not, nor shall it be deemed, an admission as to the validity of any such lien.  The descriptions provided in Schedule D are solely intended to be a summary and not an admission of liability.  The Debtors made reasonable, good faith efforts to include all known liens on Schedule D but may have inadvertently omitted to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.

Except as specifically stated on Schedule D, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.  The Debtors reserve their rights to amend Schedule D to the extent that the Debtors determine that any Claims associated with such agreements should be reported on Schedule D.

Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the Debtors' prepetition secured credit facilities, only the administrative agents have been listed for purposes of Schedule D.

4. **Schedule E– Creditors Holding Unsecured Claims**.  The Debtors have not listed on Schedule E any wage or wage-related obligations which the Debtors have been granted authority to pay pursuant to the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Certain Prepetition Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (II) Continue Employee Benefits* [Docket No. 17].  The Debtors believe that all such Claims have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted in the relevant order.

The Debtors have not listed on Schedule E any tax related obligations, save for open tax audits, which the Debtors have been granted authority to pay pursuant to the *Debtors' Motion*

*for Entry of Interim and Final Orders Authorizing the Payment of Certain Prepetition Taxes and Fees* [Docket No. 10]. The Debtors believe that all such Claims have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted in the relevant order.

5.   **Schedule F– Creditors Holding Unsecured Claims**. The Debtors have used reasonable efforts to report all general unsecured Claims against the Debtors on Schedule F based upon the Debtors' existing books and records as of August 5, 2019; however, inadvertent errors or omissions may have occurred. The Claims listed on Schedule F arose or were incurred on various dates. In certain instances, the date on which a Claim arose is an open issue of fact. In addition, the Claims of individual creditors for, among other things, goods or services are listed as either the lower of the amounts invoiced by such creditor or the amounts entered on the Debtors' books and records and may not reflect credits, rebates, or allowances due from such creditors to the applicable Debtors. The Claims and amounts listed in respect of certain trade payables reflect payments by the Debtors pursuant to applicable "first day" orders and amounts to be paid later pursuant to "second day" orders. Certain Debtors may pay additional Claims listed on Schedule F during these chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and reserve all of their rights to update Schedule F to reflect such payments. In addition, certain Claims listed on Schedule F may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

Schedule F also contains information regarding pending litigation and involving the Debtors. The dollar amount of potential Claims associated with any such pending litigation is listed as "undetermined" and marked as contingent, unliquidated, and disputed in the Schedules and Statements. Some of the litigation Claims listed on Schedule F may be subject to subordination pursuant to section 510 of the Bankruptcy Code. Schedule F also includes potential or threatened legal disputes that are not formally recognized by an administrative, judicial, or other adjudicative forum due to certain procedural conditions that counterparties have yet to satisfy.

6.   **Schedule G – Executory Contracts and Unexpired Leases.** While every effort has been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. Each lease and contract listed in Schedule G may include one or more ancillary documents, including any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals and partial releases. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as financing agreements, subordination, nondisturbance agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance. In some cases, the same supplier or provider appears multiple times in Schedule G. This multiple listing is to reflect distinct agreements between the applicable Debtor and such supplier or provider. In

11

such cases, the Debtors made their best efforts to determine the correct Debtor on which to list such executory contracts or unexpired leases. Certain of the executory contracts may not have been memorialized in writing and could be subject to dispute.

The Debtors reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Inclusion or exclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease, and the Debtors reserve all rights in that regard, including, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

7. **Schedule H - Codebtors**. Although the Debtors have made every effort to ensure the accuracy of Schedule H, inadvertent errors, omissions, or inclusions may have occurred. The Debtors hereby reserve all rights to dispute the validity, status, and enforceability of any obligations set forth on Schedule H and to further amend or supplement such Schedule as necessary. Due to the voluminous nature of debts listed in the Schedules, and to avoid unnecessary duplication, the Debtors have not listed debts that more than one Debtor may be liable if such debt is also listed on Schedules E/F or G for the respective co-Debtor liable for such debt.

The Debtors further reserve all rights, claims, and causes of action with respect to the obligations listed on Schedule H, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim. The listing of a contract, guarantee, or other obligation on Schedule H shall not be deemed an admission that such obligation is binding, valid, or enforceable.

In the ordinary course of their business, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties. Because such claims are listed elsewhere in the Statements and Schedules, they have not been set forth individually on Schedule H.

Schedule H also reflects guarantees by various Debtors. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other such agreements. Further, the Debtors believe that certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their right, but shall not be required, to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or are unenforceable.

## General Disclosures Applicable to Statements

1. **Questions 1 and 2**. The Debtors' responses to Questions 1 and 2 should be referenced in conjunction with the "Intercompany Claims" Global Note above, as a reconciliation of the Debtors' intercompany activities could result in material adjustments to the Debtors' by-legal-entity revenue reporting.

2. **Question 3**. The Debtors have responded to Question 3 in a detailed format by creditor. The

response to Question 3 includes any disbursement or other transfer made by the Debtors except for those made to insiders (which payments appear in response to Question 4), employees compensation, and bankruptcy professionals (which payments appear in response to Question 11).  In addition, the response to Question 3 does not include checks that were either voided or not presented before the Petition Date.

The Debtors pay certain vendors through a third-party credit card processor.  Although the Debtors do not directly pay the vendors, they track the payments in their accounting system. Accordingly, Statement Question 3 includes payments to the third-party processor and the reconciliation of the vendor payments.

In instances where payments are made via wire, the post date of the wire payment in the accounting system may be several days after the wire was actually sent as the Debtors do not reconcile the wire payments to the open payables on a daily basis.

3.  **Questions 4 & 30**.  For purposes of the Schedules and Statements, the Debtors define insiders as individuals that, based upon the totality of circumstances, have a controlling interest in, or exercise sufficient control over the respective Debtor so as to unqualifiably dictate corporate policy and the disposition of assets.  The Debtors do not take any position with respect to (i) such person's influence over the control of the Debtors; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities law, or with respect to any theories of liability or any other purpose.  As such, the Debtors reserve all rights to dispute whether someone identified in response to Question 4 is in fact an "insider" as defined in section 101(31) of the Bankruptcy Code.  For more information regarding each Debtor's officers and directors, see Questions 28 and 29.  Additionally, the information contained herein in response to Question 4 is incorporated as the Debtors' response to Question 30 herein

The payroll-related amounts shown in response to this question for any salary, bonus or additional compensation, and/or severance payments are gross amounts that do not include reductions for amounts including employee tax or benefit withholdings.

4.  **Question 7.**  The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings.  The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors.  The Debtors also reserve their rights to assert that a Debtor is not an appropriate party to such actions or proceedings.

5.  **Question 9.**  In some instances employees may have provided charitable donations on behalf of the Debtors.  In those instances, the employees were reimbursed by the Debtors.

6.  **Question 11.**  All disbursements listed in Statement 11 were initiated and disbursed by Jack Cooper Transport Company, Inc. and Jack Cooper Transport Canada, Inc. but were for the benefit of all Debtors.

7.   **Question 13.**  While the Debtors have made reasonable efforts to respond comprehensively to Question 13, certain *de minimis* asset sales and transfers may be omitted unintentionally.

8.   **Question 14.**  In the ordinary course of the Debtors' business, the Debtors engage in short-term leases, generally on a month-to-month basis, to provide services consistent with their customer agreements for the storage of their customers' overflow vehicles. In light of the Debtors' short term use of such locations and the nature of such use, the addresses of these locations are not included herein.

9.   **Question 21.**  The Debtors are in the automotive transport business delivering finished vehicles from manufacturing plants, vehicle distribution centers, seaports, and railheads to new vehicle dealerships.  The Debtors operate a fleet of over 1,600 active rigs and a network of 39 terminals across the United States and Canada.  At any given time, the Debtors are in possession of a large number of their customers' finished vehicles that are in transit or in storage.  Accordingly, it would be unduly burdensome and impractical to itemize herein all of the Debtors' customers' vehicles that are in the Debtors' possession at any given time.

10.   **Questions 26a & 26c.**  All bookkeepers and accountants maintaining the Debtors' books and records within two years prior to the Petition Date are employed by the Debtors' within the Debtors' internal accounting department.  As of the Petition Date, the Debtors' internal account department is in possession of the Debtors' books and records.

11.   **Question 26d.**  In the ordinary course of the Debtors' business, the Debtors provide financial statements to a large number of third-parties, including, but not limited to, (i) the Debtors' lenders consistent with the Debtors' obligations under the documentation governing the Debtors' various credit facilities, (ii) the Debtors' customers on a periodic basis, (iii) certain of the Debtors' primary vendors, and (iv) certain of the Debtors' lessors.  Any effort to itemize and compile a list of each third-party to whom the Debtors issued a financial statement to in the two year prior to the Petition Date would be impracticable and unduly burdensome, as well as subject inadvertent omissions.  Accordingly, the Debtors do not list such third-parties herein.

12.   **Question 32.**  Information responsive to Question 32 is set forth in detail in the Debtors' response to Question 17.

**Fill in this information to identify the case:**

Debtor name   **Jack Cooper Investments, Inc.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF GEORGIA (ATLANTA DIVISION)

Case number (if known)   **19-62411**

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy 04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

### Part 1:  Income

1.  **Gross revenue from business**

    ■ None.

    | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
    |---|---|---|

2.  **Non-business revenue**
    Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ■ None.

    | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
    |---|---|---|

### Part 2:  List Certain Transfers Made Before Filing for Bankruptcy

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
    List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ■ None.

    | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
    |---|---|---|---|

4.  **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
    List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

    ■ None.

    | Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
    |---|---|---|---|

5.  **Repossessions, foreclosures, and returns**
    List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

Debtor    **Jack Cooper Investments, Inc.**                                    Case number *(if known)*  **19-62411**

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

| **Part 3:** | **Legal Actions or Assignments** |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

| **Part 5:** | **Certain Losses** |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

| **Part 6:** | **Certain Payments or Transfers** |
|---|---|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

Debtor    **Jack Cooper Investments, Inc.**    Case number *(if known)*   **19-62411**

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

| **Part 7:** | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

| **Part 8:** | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

| **Part 9:** | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

| **Part 10:** | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

| Debtor | **Jack Cooper Investments, Inc.** | Case number *(if known)* **19-62411** |
|---|---|---|

moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| | | | | |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|
| | | | |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| | | | |

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

| **Part 12:** | **Details About Environment Information** |
|---|---|

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.** **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.

☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | |

**23.** **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.

☐ Yes. Provide details below.

Debtor    **Jack Cooper Investments, Inc.**                                        Case number *(if known)*  **19-62411**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

- ■ No.
- ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1.   **See SOFA Part 13, Question 25 Attachment** | | EIN:<br><br>From-To |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1.   **Internal Company Accounting Team**<br>**1100 Walnut St, STE 2400**<br>**Kansas City, MO 64106** | **2017-2019** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26b.1.   **KPMG**<br>**1000 Walnut Street, STE 1100**<br>**Kansas City, MO 64106** | **2017** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.   **Internal Company Accounting Team**<br>**1100 Walnut St, STE 2400**<br>**Kansas City, MO 64106** | **2017-2019** |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

- ■ None

Debtor   **Jack Cooper Investments, Inc.**                                 Case number *(if known)* **19-62411**

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Gerry Czarnecki | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Director | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Greg May | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Officer | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Katie Helton | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Officer | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Kevin McHugh | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Director | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Michael Riggs | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Director/Officer | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Sam Torrence | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Director | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Sarah Amico | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Director/Officer | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Theo Ciupitu | 1100 Walnut Street, Suite 2400 Kansas City, MO 64106 | Officer | |

**29.** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ No
☑ Yes. Identify below.

Debtor    **Jack Cooper Investments, Inc.**                                          Case number *(if known)* **19-62411**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Edrienne Brandon** | **1100 Walnut Street, Suite 2400 Kansas City, MO 64106** | **Director** | **4/18/2018 - 4/01/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **J.J. Schickel** | **1100 Walnut Street, Suite 2400 Kansas City, MO 64106** | **Director** | **4/18/2018 - 4/01/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Kirk Ferguson** | **1100 Walnut Street, Suite 2400 Kansas City, MO 64106** | **Director** | **4/18/2018 - 4/01/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Kyle Haulotte** | **1100 Walnut Street, Suite 2400 Kansas City, MO 64106** | **Director** | **4/18/2018 - 5/01/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Michael Scott Testman** | **1100 Walnut Street, Suite 2400 Kansas City, MO 64106** | **Director** | **4/18/2018 - 4/01/2019** |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Please refer to Schedule SOFA P2, Q4** | | | |
| **Relationship to debtor** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

Debtor    **Jack Cooper Investments, Inc.**                                                          Case number *(if known)*    **19-62411**

---

| Part 14: | Signature and Declaration |
| --- | --- |

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on      **September  6, 2019**

**/s/ Greg May**                                                        **Greg May**
Signature of individual signing on behalf of the debtor          Printed name

Position or relationship to debtor      **CFO**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
■ Yes

In re Jack Cooper Investments, Inc.
Case No. 19-62411

SOFA Part 13, Question 25 - Other businesses in which the Debtor has or has had an interest

| Name | Address1 | Address2 | Address3 | City | State | Zip | Country | Taxpayer ID No. (EIN) | Nature of Business | Beginning and Ending Dates |
|---|---|---|---|---|---|---|---|---|---|---|
| Arrendadora de Equipo Para El Transporte De Automoviles ("Areta") S. de R.L. de C.V. | Alejandro Dumas # 42 | Col. Polanco Chapultepec | Delegación Miguel Hidalgo | Mexico D.F. | | CP 11560 | Mexico | AET9712226G8 (Mexico) | | 12/22/1997 |
| Auto & Boat Relocation Services, LLC | 35 Cold Spring Road | Ste. 511 | | Rocky Hill | CT | 06067 | | 06-1439095 | | 11/3/1995 |
| Auto Export Shipping, Inc. | 187 Mill Lane | Ste. 103 | | Mountainside | NJ | 07092 | | 22-3641346 | | 3/10/1999 |
| Auto Handling Corp. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 73-0934011 | | 1/24/1972 |
| Axis Logistic Services, Inc. (DBA Jack Cooper Relocation) | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 46-4212904 | | 11/18/2013 |
| Axis Logística S. de R.L. de C.V. | Ave. Lopez Mateos Sur # 4321 int 10 | Col. La Calma | | Zapopan | Jalisco | CP 45070 | Mexico | ALC990225MY4 (Mexico) | | 3/1/1999 |
| Axis Operadora Guadalajara S.A. de C.V. | Ave. Arcos Sur 267 Int 202 | Col. Los Arcos Sur | | Guadalajara | Jalisco | CP 44500 | Mexico | AOG060411IQ7 (Mexico) | | 4/11/2006 |
| Axis Operadora Hermosillo S.A. de C.V. | Ave. Arcos Sur # 267 int 202 | Col. Arcos Vallarta Sur | | Guadalajara | Jalisco | CP 44500 | Mexico | AOH050427IS5 (Mexico) | | 4/27/2005 |
| Axis Operadora Mexico S.A. de C.V. | PATRICIO SANZ # 722 | COL. DEL VALLE | | MEXICO D.F. | | CP 03100 | Mexico | AOM060411IG2 (Mexico) | | 4/11/2006 |
| Axis Operadora Monterrey S.A. de C.V. | Ave. Paseo del Alba # 230 Int 5 | | | Santiago Tepalcapa | | CP 54768 | Mexico | AOM060411NC6 (Mexico) | | 4/11/2006 |
| Axis Traslados S. de R.L. de C.V. | Ave. Arcos Sur 267 Int 202 | Col. Los Arcos Sur | | Guadalajara | Jalisco | CP 44500 | Mexico | ATR060622FP9 (Mexico) | | 6/22/2006 |
| CarPilot, Inc. | 630 Kennesaw Due West Road | | | Kennesaw | GA | 30152 | | 32-0493033 | | 4/8/2016 - 4/29/2019 |
| CTEMS, LLC | 576 Sycamore Drive | | | Milpitas | CA | 95035 | | 27-4957725 | | 2/14/2011 |
| Jack Cooper Canada 1 Limited Partnership | 235100 Ryan Road SE | | | Rocky View | AB | T1X 0K3 | Canada | 98-1158084 (US) | | 11/13/2013 |
| Jack Cooper Canada 2 Limited Partnership | 2709 De La Rotonde | | | Charny | QC | G6X 2M2 | Canada | 98-1158086 (US) | | 11/13/2013 |
| Jack Cooper Canada GP 1 Inc. | Registered Office | 66 Wellington Street West | Suite 5300 | Toronto | ON | M5K 1E6 | Canada | 98-1158087 (US) | | 11/13/2013 |
| Jack Cooper Canada GP 2 Inc. | 2709 De La Rotonde | | | Charny | QC | G6X 2M2 | Canada | 98-1158089 (US) | | 11/13/2013 |
| Jack Cooper CT Services, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 46-4213523 | | 11/18/2013 |
| Jack Cooper Diversified, LLC | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 82-5199414 | | 3/28/2018 |
| Jack Cooper Enterprises, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 47-0963001 | | 5/29/2014 |
| Jack Cooper Finance Co. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 46-3924871 | | 10/22/2013 |
| Jack Cooper Holdings Corp. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 26-4822446 | | 5/6/2009 |
| Jack Cooper Logistics, LLC | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 27-4023433 | | 11/9/2010 |
| Jack Cooper Rail & Shuttle, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 46-4217801 | | 11/18/2013 |
| Jack Cooper Specialized Transport, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 45-3178881 | | 8/31/2011 - 4/29/2019 |
| Jack Cooper Transport Canada, Inc. | 2709 De La Rotonde | | | Charny | QC | G6X 2M2 | Canada | 98-1098733 (US) | | 1/13/2010 |
| Jack Cooper Transport Company, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 73-0493030 | | 1/26/1939 |
| Jack Cooper Ventures, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 83-0990805 | | 6/21/2018 |
| JCEI Merger Sub, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | N/A | | 3/28/2018 |
| JCH México, S. de R.L. de C.V. | Ave. de los Arcos # 267 int 107 | Col. Arcos Sur | | Guadalajara | Jalisco | CP 44150 | Mexico | JME131211F10 (Mexico) | | 12/13/2013 |
| JCSC Netherlands 2 C.V. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 98-1190939 (US) | | 12/10/2013 - 12/28/2017 |
| JCSV Dutch 1 C.V. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 98-1190940 (US) | | 12/6/2013 - 12/28/2017 |
| JCSV Dutch B.V. | Prins Bernhardplein 200 | | | Amsterdam | | 1097 JB | The Netherlands | 853451072 (Dutch) | | 12/5/2013 - 12/28/2017 |
| JCSV Dutch Cooperatief U.A. | Prins Bernhardplein 200 | | | Amsterdam | | 1097 JB | The Netherlands | 98-1190938 (US) | | 12/9/2013 |
| JCSV I LLC | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | N/A | | 12/5/2013 - 12/28/2017 |
| JCSV II LLC | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | N/A | | 12/6/2013 - 12/28/2017 |
| JCSV III LLC | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | N/A | | 11/20/2013 - 12/28/2017 |
| North American Auto Transportation Corp. (DBA NA Auto Transport & North American Auto Transport) | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 83-1848293 | | 9/7/2018 |
| Pacific Motor Trucking, Inc. | 1100 Walnut St. | Ste. 2400 | | Kansas City | MO | 64106 | | 73-1327203 | | 7/20/1988 - 6/11/2019 |